**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAKE CHARLES DIVISION**

| JAN A. VANNATTA | : | DOCKET NO. 04-2352 |
|---|---|---|
| VS. | : | JUDGE MINALDI |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY | : | MAGISTRATE JUDGE WILSON |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The matter has been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. §405(g), the undersigned finds that the Commissioner's decision is supported by substantial evidence in the record and is consistent with relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

## BACKGROUND

Jan A. Vannatta filed applications for Supplemental Security Income payments and Disability Insurance Benefits on December 15 and 19, 2000, respectively. (Tr. 37-39, 315-319). He alleged an inability to work since September 1, 2000, due to a head injury, memory loss, balance problems, concentration difficulty, and nocturnal breathing problems. (Tr. 37, 47). The claims were denied at the initial level of the administrative process. (Tr. 27-32, 320). Thereafter, Vannatta requested, and received a March 7, 2002, hearing before an Administrative Law Judge ("ALJ"). (Tr. 321-342). In a November 13, 2002, written decision, the ALJ determined that

Vannatta was not disabled under the Act, finding at Step Five of the sequential evaluation process that, under the guidelines, he retained the residual functional capacity to make an adjustment to work that exists in substantial numbers in the economy. (Tr. 13-21). Vannatta appealed the adverse decision to the Appeals Council. However, on September 9, 2004, the Appeals Council denied Vannatta's request for review, and thus the ALJ's decision became the final decision of the Commissioner. (Tr. 4-6).

On November 12, 2004, Vannatta petitioned this court to review the denial of benefits. He alleges the following errors:

(1) the ALJ applied an incorrect "severity" standard at Step Two of the sequential evaluation process;

(2) the ALJ failed to evaluate plaintiff's impairments in the aggregate;

(3) the ALJ's residual functional capacity assessment is not supported by substantial evidence; and

(4) the ALJ improperly used the medical-vocational guidelines as a framework for decision-making.

## STANDARD OF REVIEW

The court's review of the ultimate decision of the Commissioner is limited to determining whether the administrative decision is supported by substantial evidence and whether the decision is free of legal error. *Dellolio v. Heckler*, 705 F.2d 123 (5th Cir. 1993). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying the improper legal standards. *Singletary v. Brown*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to

2

support a conclusion. *Richardson v. Perales*, 402 U.S. at 401.

When appearing before the ALJ, the plaintiff had the burden of proof to establish a medically determinable physical or mental impairment that prevented him from engaging in any substantial gainful activity for at least twelve consecutive months. 42 U.S.C. §§423(d)(1)(A) & 1381(a). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *Johnson v. Bowen,* 864 F.2d 340, 343-344 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Secretary. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## **LAW AND ANALYSIS**

The secretary evaluates disability claims under the Social Security Act through a five-step process: (1) Is the claimant currently working and engaged in substantial gainful activity? (2) Can the impairment or combination of impairments be classified as severe? (3) Does the impairment(s) meet or equal a listed impairment in Appendix 1 of the Secretary's regulations? (If so, disability is automatic.) (4) Does the claimant's residual functional capacity permit him to perform past relevant work? and if not, (5) Can the claimant perform other work? 20 C.F.R. §§ 404.1520, 416.920. When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The first four steps place the burden upon the claimant. At the fifth step, the burden shifts to the Secretary to establish that the claimant can perform other work. If the Secretary meets this burden, then the claimant must then prove that he cannot in fact perform the work suggested. *See Falco v. Shalala*, 27 F.3d 160 (5th Cir. 1994); *Muse v. Sullivan*, 925 F.2d 785 (5th Cir. 1991).

**Issues 1-2:**

The ALJ found at Step Two of the sequential evaluation process that Vannatta suffered from the following severe impairments: seizure disorder, mild chronic obstructive pulmonary disease ("COPD"), and obesity. (Tr. 16). However, the ALJ concluded that the impairments were not severe enough to meet or medically equal any one of the impairments listed in the Category of Impairments in Appendix 1 to Subpart P, Social Security Regulations No. 4. (Tr. 16-17, 20).

Plaintiff complains that the ALJ applied the incorrect standard in determining that his various other impairments were not severe. Yet, even so, when, as here the ALJ's analysis proceeds beyond Step Two of the sequential evaluation process, strict adherence to *Stone* and its requirements is not required. *See, Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir. 1988); *Chapparo v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987); *Jones v. Bowen*, 829 F.2d 524, n. 1 (5th Cir. 1987). Moreover, once a severe impairment is determined to exist, all medically determinable impairments must be considered in the remaining steps of the sequential analysis. 20 C.F.R. §§ 404.1523 & 416.923. Although the instant ALJ found that several of plaintiff's alleged impairments were not severe, he nonetheless proceeded to consider the medical record and the aggregate impact of all the impairments. (Tr. 14-18). Indeed, the ALJ emphasized that once a severe impairment is established, then *all* medically determinable impairments must be considered in the remaining steps of the sequential analysis. (Tr. 14-15).[1] Accordingly, there is

---

[1] The ALJ specifically considered plaintiff's impairments of a head injury, left carpal scaphoid, left wrist osteoarthritis, and hypertension. (Tr. 15). However, he found that these impairments did not significantly impact plaintiff's residual functional capacity. That determination is supported by substantial evidence. *See*, discussion, *infra*.

4

no basis for plaintiff's argument that the ALJ failed to consider his impairments in combination.

**Issue 3:**

The ALJ next determined that Vannatta retained the residual functional capacity to perform work "at all exertional limitations,"[2] reduced by an inability to drive automotive equipment or to work around dangerous moving machinery and at unprotected heights. (Tr. 18, 20). Vannatta's residual capacity is further reduced by an inability to work in the presence of high concentrations of dust, fumes, gases, smoke, or other airborne respiratory irritants. *Id*. Plaintiff argues that the ALJ's restriction to "high concentrations" of airborne pollutants is not supported by substantial evidence. We disagree.

On May 29, 2001, a physical residual functional capacity assessment was completed by non-examining agency physician, Erol Kozdereli, M.D. (Tr. 84-91). He indicated that Vannatta was to avoid even "moderate" exposure to fumes, odors, dusts, gases, poor ventilation, hazardous machinery, and heights. *Id*.[3] Plaintiff contends that Dr. Kozdereli's assessment is the only potential source for the ALJ's limitation to avoid "high concentrations" of airborne respiratory irritants. Because the ALJ's environmental limitation does not match Kozdereli's limitation, plaintiff concludes that the ALJ must have erred. Yet, plaintiff overlooks other potential sources

---

[2] In other words, very heavy, heavy, medium, light, and sedentary work. *See*, 20 C.F.R. § 416.967(e)(if someone can do very heavy work, they can also do heavy, medium, light, and sedentary work). "Very heavy work involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more." *Id*.

[3] Kozdereli further indicated that Vannatta could occasionally lift 20 pounds, and frequently lift 10 pounds. *Id*. Vannatta could sit, stand, and walk for about six hours in an eight hour day. *Id*. Pushing and pulling were unlimited. *Id*. He was unable to climb a ladder, rope, or scaffolds. *Id*. All other postural activities were limited to occasional. *Id*. A potential difficulty with repetitive wrist bending was noted. *Id*.

5

for the ALJ's finding including, relatively benign lung capacity test results and a consultative examination that assessed no limitations at all. (Tr. 82-83).

For example, on August 24, 2002, Vannatta was examined by Vanessa Thomas, M.D. (Tr. 201-203). At the examination, Vannatta weighed 274 pounds, and was deemed obese. *Id.*[4] He ambulated well, with a slow gait. *Id.* He had mild expiratory wheezing bilaterally. *Id.* Vannatta had a normal grip strength, with a left wrist brace. *Id.* His left shoulder rotation was reduced. *Id.* He exhibited some balance loss, but was able to squat. *Id.* Motor strength was 5/5. *Id.* Chest x-rays revealed increased pulmonary vasculature bilaterally, with hyperinflation. *Id.* Thomas diagnosed mild chronic obstructive pulmonary disease. *Id.* She further diagnosed a history of head injury, with reported memory problems and inability to maintain balance. *Id.* She opined that Vannatta was able to sit, stand, walk, lift, hear, speak, and handle objects without limitation. *Id.* Thomas also completed a Medical Source Statement of Ability to do Work-Related Activities (Physical). (Tr. 204-207). She indicated that Vannatta had no limitations at all. *Id.*[5]

---

[4] Plaintiff argues that the ALJ did not perform an individualized assessment of his obesity as required by Social Security Ruling 02-1p. Yet, as we appreciate the ALJ's decision, he carefully considered plaintiff's obesity in relation to his other impairments and residual functional capacity. (*See*, Tr. 16-17).

[5] Anand K. Roy, M.D., examined Vannatta on March 30, 2001, at the request of Disability Determination Services. (Tr. 79-81). He did not complete a medical source statement. Dr. Roy concluded that Vannatta could engage in non-skillful activity. *Id.*
Plaintiff contends that the ALJ should have sent Vannatta to a neurologist upon Dr. Roy's recommendation. In fact, Dr. Roy requested EEG documentation *or* evaluation by a neurologist. (Tr. 81). The purpose behind Dr. Roy's request was to substantiate Vannatta's claim of seizures. Subsequently, an EEG test was obtained that supported plaintiff's allegation of seizures and which was credited by the ALJ, with resulting limitations. (*See*, Tr. 148). Under these circumstances, a neurologist consultation was superfluous and unwarranted.

Needless to say, Dr. Thomas's findings more than support the ALJ's residual functional capacity assessment. Moreover, insofar as the non-examining physician's assessment contradicts the evaluation and assessment by an examining physician, the ALJ cannot rely on the former assessment. *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991).[6] Accordingly, we find that the ALJ's residual functional capacity assessment is supported by substantial evidence.

**Issue 4**:

The ALJ concluded at Step Four of the sequential evaluation process that Vannatta was unable to return to his past relevant work. (Tr. 18). Accordingly, he proceeded to Step Five. At this step, the ALJ determined that Vannatta was a younger individual, with a limited education, and no transferrable skills. (Tr. 19-20).[7] Relying upon the medical-vocational guidelines, the ALJ concluded that Vannatta was not disabled. Rule 204.00, Appendix 2, Subpart P, Regulations No. 4. (Tr. 19, 21).

Plaintiff complains that his non-exertional impairments preclude use of the guidelines.[8] Yet, non-exertional impairments that do not significantly impact the occupational base for work do not preclude use of the guidelines. *See*, *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987)(citations omitted)(when a claimant's non-exertional impairments do not significantly

---

[6] Thus explaining the omission of Dr. Kozdereli's assessment from the ALJ's decision.

[7] Vannatta was 43 at the time of the decision. (Tr. 19). Transferability of work skills was not an issue. (Tr. 19-20).

[8] Ordinarily, the medical vocational guidelines do not apply to a claimant with solely non-exertional impairments. *Broussard v. Bowen*, 828 F.2d 310, 313 (5th Cir. 1987); *Pate v. Heckler*, 777 F.2d 1023, 1026 (5th Cir. 1985); and *Martin v. Heckler*, 748 F.2d 1027, 1034-1035 (5th Cir. 1984). Here, however, plaintiff's non-exertional impairments do not significantly impact his capacity for work. *See* discussion, *infra*.

7

affect her residual functional capacity, the ALJ may rely exclusively on the Guidelines); *see also*, *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999); *Selders v. Sullivan*, 914 F.2d 614, 618-619 (5th Cir. 1990).

Plaintiff cites this court's decision in *Lilly v. Apfel*, as support for his argument that the medical-vocational guidelines cannot be used when the claimant's residual functional capacity includes non-exertional environmental limitations. *Lilly v. Apfel*, Civil Action Number 98-1844 (W.D. La. 10/15/1999, Memorandum Ruling & Judgment). *Lilly* is not on point, however. *Id.* In *Lilly*, the ALJ failed to address whether the claimant's ability to perform *light* work was restricted by an environmental limitation. *Id.* Here, the ALJ found that Vannatta was capable of work at all exertional levels. The medical-vocational guidelines expressly provide that when a claimant remains capable of heavy or very heavy work, environmental restrictions ordinarily do not significantly affect the range of available work. Rule 204.00, Appendix 2, Subpart P, Regulations No. 4.[9] Moreover, the instant ALJ specifically considered the effects of Vannatta's non-exertional impairments. (Tr. 19). In so doing, the ALJ relied on Social Security Ruling 85-15 which provides, in pertinent part,

> [a] person with a seizure disorder who is restricted only from being on unprotected elevations and near dangerous moving machinery is an example of someone whose environmental restriction does not have a significant effect on work that exists at all exertional levels.

\* \* \*

---

[9] *Contrast, Thomas v. Schweiker*, 666 F.2d 999 (5th Cir. 1982)(cited by *Lilly, supra*). In *Thomas*, the court emphasized that the guidelines did not encompass non-exertional environmental limitations. *Id.* Yet, the guidelines *do* contemplate environmental limitations – at least for claimants capable of heavy or very heavy work. *See*, Rule 204.00. Moreover, since *Thomas* was decided, the Commissioner has issued a ruling addressing the effects of environmental limitations on the guidelines. *See*, discussion, *infra*.

8

> Where a person has a medical restriction to avoid excessive amounts of noise, dust, etc., the impact on the broad world of work would be minimal because most job environments do not involve great noise, amounts of dust, etc.

SSR 85-15.[10]

Finally, we note that in *Guillory v. Barnhart*, the claimant had a residual functional capacity for light work and environmental limitations consisting of no concentrated exposure to extreme heat, humidity or air pollutants; and no work at heights or around dangerous moving machinery. *Guillory v. Barnhart*, Civil Action Number 03-0775 (W.D. La. 3/12/04 Report & Recommendation; 4/22/04 Judgment). Yet, we held that these limitations did not significantly impact the claimant's work capacity. *Id.* The judgment was affirmed on appeal. *Guillory v. Barnhart*, No. 04-30612 (5th Cir. 2005)(unpubl.).[11] The same result obtains here.

For the foregoing reasons, we find that the Commissioner's determination that plaintiff was not disabled under the Social Security Act, is supported by substantial evidence and is free of legal error. Accordingly,

IT IS RECOMMENDED that the Commissioner's decision be affirmed and the matter dismissed.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

---

[10] It stands to reason that Vannatta's driving restriction would be encompassed within the restriction on exposure to dangerous moving machinery.

[11] Unpublished Fifth Circuit opinions issued on, or after January 1, 1996, are ordinarily not precedent. FRAP 47.5.4. However, they are persuasive. *Id.* Moreover, the fact that a case remains unpublished reflects the panel's belief that the decision simply reaffirmed a well-settled principle of law. *See*, FRAP 47.5.1.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 18th day of January, 2006.

_____
ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE